UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PLAINS GAS SOLUTIONS, LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:14-cv-0472 |
| § | |
| TENNESSEE GAS PIPELINE § | |
| COMPANY, LLC, *et al.*, § | |
| § | |
| *Defendants*. § | |

## Memorandum and Order

Plains Gas Solutions, LLC ("Plaintiff") originally brought this case in Texas state court against Defendants Tennessee Gas Pipeline Company, LLC ("TGP"); Kinetica Partners, LLC; Kinetica Energy Express, LLC; and Kinetica Midstream Energy, LLC (collectively "Kinetica"). Plaintiff then filed an amended complaint joining Targa Liquids Marketing and Trade, LLC ("Targa") as a Defendant. Plaintiff asserts breach of contract and tortious interference claims against TGP and Kinetica, and seeks declaratory judgment against Targa. Targa removed the case to federal court, claiming federal question jurisdiction on the basis of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1). Pending before this Court is Plaintiff's Motion to Remand (Doc. No. 19).[1] Having considered the parties' pleadings, arguments, and the applicable law, the Court finds the Plaintiff's motion must be **GRANTED**.

I.  BACKGROUND AND REMOVAL

Plaintiff filed a lawsuit against Defendants TGP and Kinetica in the 151st Judicial District of Harris County, Texas on October 16, 2013. Doc. No. 1-3. On January 21, 2014, Plains filed its

---

[1] All docket references are to Civil Action No. 4:14-CV-0472.

1

Second Amended Pleading adding Targa as a defendant. Doc. No. 1-8. Plaintiff alleges that TGP unlawfully assigned its contract with Plaintiff to Kinetica, in violation of the assignment provision in the contract. *Id.* at 1-2, 6-7. Plaintiff also alleges that Kinetica closed an onshore pipeline valve, valve 507A-1601 of the Cameron System, depriving Plaintiff's processing plant of gas. *Id.* at 7-9. Plaintiff contends that Kinetica misrepresented whether the pipeline would transport gas to Plaintiff's plant. *Id.* at 17. Plaintiff claims that TGP and Kinetica's actions interfered with contracts Plaintiff had with gas producers who rely on Plaintiff's plant for processing. *Id.* at 17-18. Finally, Plaintiff alleges that Targa has unlawfully charged Plaintiff deficiency payments, despite an applicable *force majeure* clause in their contract. *Id.* 10-14. Plaintiff sues for damages and declaratory judgment under state law. *Id.* at 14-20.

On February 25, 2014, Targa removed this action from Texas state court to the Southern District of Texas, Houston Division. Doc. No. 1. All Defendants consented to removal. Targa claimed removal was justified because Plaintiff's claims "arise under the Outer Continental Shelf Lands Act." *Id.* at 2.

## II.     PLAINTIFF'S MOTION TO REMAND

Plaintiff moves for remand to Texas state court. Doc. No. 19. Plaintiff contends that OCSLA does not give the Court jurisdiction over its claims because the contract dispute lacks an "intimate connection" with the exploration, development or production of gas. *Id.* at 8. Plaintiff argues that OCSLA's jurisdictional grant is limited to "three defined segments of the energy industry" and does not extend to downstream onshore processing. Doc. No. 28 at 6. Plaintiff also argues that federal jurisdiction is foreclosed by the Fifth Circuit's test in *In re Deepwater Horizon*, which asks courts to examine whether "the activities that caused the injury constituted an operation 'conducted on the outer Continental Shelf'." *Id.* at 5.

2

Defendants disagree that OCSLA draws a jurisdictional line between production and later processing stages. Doc. No. 22. Defendants cite *El Paso E&P Co., L.P. v. BP Am. Production Co.*, in which the Eastern District of Louisiana found federal jurisdiction over a dispute involving a separation facility that neighbors Plaintiff's processing plant, and provides separated hydrocarbon gas to Plaintiff's plant for processing. *Id.* at 11. Defendants advocate for the application of a "but-for" test, arguing that "*[b]ut for* operations on the [outer Continental Shelf ("OCS")], there would not be any dispute about the flow of such OCS gas on pipeline systems, dedication and nomination of the gas, rights to process the gas, and obligations to deliver raw make extracted from the gas." *Id.* at 16 (emphasis in original). Because Plaintiff's facility processes gas from OCS, Defendants believe that this Court has jurisdiction over disputes concerning the facility and its contracts.

### III.   LEGAL STANDARD

The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed." 28 U.S.C. § 1441(a). The plaintiff in a removed action may challenge the assertion of federal jurisdiction through a motion to remand. Although a motion to remand is brought by the plaintiff, the removing defendant carries the burden of showing that removal was proper and that the federal court has jurisdiction over the action. *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). Federal removal jurisdiction is to be narrowly construed, with all ambiguities resolved against the existence of jurisdiction and in favor of remand. *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

## IV. ANALYSIS

The Plaintiff does not seek relief under the OCSLA, nor does the OCSLA appear on the face of its Complaint. Under the well-pleaded complaint rule, this typically would be sufficient to avoid federal jurisdiction.[2] The Fifth Circuit has held, however, that the well-pleaded complaint rule does not apply to removal under the OCSLA. *See Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988) ("In determining federal court jurisdiction, we need not traverse the Serbonian Bog of the well pleaded complaint rule . . . because § 23 of OCSLA [i.e., 43 U.S.C. § 1349(b)(1)] expressly invests jurisdiction in the United States District Courts.") (citation omitted); *see also In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 747 F.Supp.2d 704, 707 (E.D. La. 2010). Thus, Plaintiff's Complaint may be removable under the OCSLA even though it does not contain a federal claim for relief or reference a question of federal law on its face.

### A. The Fifth Circuit has Adopted a "But-For" Test to Determine Federal Jurisdiction Over State Law Claims under OCSLA

Section 1349(b)(1) of the OCSLA creates federal subject matter jurisdiction for certain OCS-related cases:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . .

---

[2] The well-pleaded complaint rule allows a plaintiff to avoid removal to federal court by crafting its complaint to seek relief only under state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

4

43 U.S.C. § 1349(b)(1) . The parties disagree on the relevant standard for determining whether a complaint alleging only state law claims falls within this jurisdictional grant. Plaintiff argues for a test that requires an "intimate connection" between the disputed contract provision and offshore gas production. Doc. No. 19 at 8. Plaintiff contends that contract claims, such as the ones alleged here, should be differentiated from tort claims, which are governed by the "but-for" test. *Id.* By contrast, Defendants argue that OCSLA jurisdiction is proper whenever a plaintiff's claim would not have arisen "but for" operations conduct on the OCS. Doc. No. 22, 23. Defendants disagree that jurisdiction over contract claims should be decided under a separate test, and they argue that Plaintiff has plead both contract and tort claims in its Complaint. *Id.*

The Court finds that the but-for test should be applied to determine whether Plaintiff's state law claims fall within the statutory language of section 1349(b)(1). The Fifth Circuit has recently reiterated that section 1349's jurisdictional grant requires only a "but-for connection." *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014); *see also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999); *Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996). In establishing this test, the Fifth Circuit has interpreted the language of the jurisdictional grant as "straightforward and broad." *Deepwater Horizon*, 745 F.3d at 163; *see also Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013); *Tenn. Gas Pipeline*, 87 F.3d at 154.

Further, the Court is unpersuaded that there is a difference between federal court jurisdiction over tort claims and contract claims under the OCSLA.[3] The statutory language draws no distinction between the types of "cases and controversies" it governs. The statute limits

---

[3] Plaintiff's Complaint includes claims for breach of contract and tortious interference with contract. Doc. 1-3.

federal jurisdiction by requiring a connection with an operation conducted on the OCS, but does not create a higher jurisdictional standard for certain types of claims. The Fifth Circuit has similarly not distinguished between cases based on their underlying claims, and has instead applied its interpretation of the OCSLA's broad jurisdictional grant to contract claims and tort claims alike.[4] *Compare EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994) (noting the "broadly worded grant of original jurisdiction" in a partition action), *with Barker v. Hercules Offshore Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) (stating that "the jurisdictional grant in OCSLA is broad."). Although certain Fifth Circuit decisions apply the "efficient exploration of resources" standard to contract claims, *see e.g., Amoco*, 844 F.2d 1202 (5th Cir. 1988); *United Offshore v. Southern Deepwater Pipeline*, 899 F.2d 405 (5th Cir. 1990), the court has not suggested that this is the dispositive test in these cases. Since no Fifth Circuit case has limited the application of the but-for test to certain types of claims, the Court declines to do so here.

The Court recognizes, however, that the "but-for" test adopted by the Fifth Circuit is not limitless. At its margins, a blind application of this test would result in federal court jurisdiction over all state law claims even tangentially related to offshore oil production on the OCS. Defendants' argument that the "but-for" test extends jurisdiction to any claim that would not exist but for offshore production lends itself to absurd results; under the Defendants' view, an employment dispute brought by an employee of an onshore processing facility would fall within the OCSLA because, but for the activities on the OCS, the facility and the employment relationship would not exist.

---

[4] In *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, the Fifth Circuit does note that the contract at issue was "intimately connected" with an operation on the OCS, but does not predicate federal jurisdiction on this connection. 754 F.2d 1223, 1229 (5th Cir. 1985).

The Fifth Circuit has rejected such a universal application, recognizing that "one can hypothesize a 'mere connection' between the cause of action and the OCS operation too remote to establish federal jurisdiction." *In re Deepwater Horizon*, 745 F.3d at 163. Accordingly, the Fifth Circuit cabined federal court jurisdiction under the OCSLA by outlining a two-step inquiry to determine whether jurisdiction is appropriate. In *In re Deepwater Horizon*, the court examined "whether (1) the activities that caused the injury constituted an operation conducted on the outer Continental Shelf that involved the exploration and production of minerals, and (2) the case arises out of, or in connection with the operation." *In re Deepwater Horizon*, 745 F.3d at 163 (internal quotations and citation omitted). Under this inquiry, a court must determine the connection between a case and an operation only after it has established that the activities that caused the injury constituted an operation on the OCS.

Although not defined by statute, the term 'operation' has been understood by the Fifth Circuit as "the doing of some physical act." *Tenn. Gas Pipeline*, 87 F.3d at 154. The terms "development" and "production" are defined by the OCSLA. Development "means those activities which take place following discovery of minerals in paying quantities, including . . . operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered."[5] 43 U.S.C. § 1331(l). Production "means those activities which take place after the successful completion of any means for the removal of minerals, including . . . transfer of minerals to shore." 43 U.S.C. § 1331(m). Thus, for a claim of injury to fall within the jurisdictional grant of the OCSLA, it must be in connection with a physical act on the OCS that involved the exploration, development, or production of minerals.

---

[5] Although the Fifth Circuit's most recent iteration of its jurisdictional test in *In re Deepwater Horizon* omits the term 'development,' this Court will discuss the term because it appears in section 1349.

Once each of the terms in the statute is given its appropriate meaning, it becomes apparent that this Court does not have jurisdiction over Plaintiff's claims. In order for this Court to have jurisdiction, the activities that caused the alleged injuries must constitute "some physical act" "conducted on the outer Continental Shelf." Additionally, this "physical act" must involve activities that satisfy the statutory definitions of development or production. Plaintiff's claims meet neither requirement, and thus federal question jurisdiction is inappropriate.

### B. The Activities that Allegedly Caused the Injury Do Not Constitute an Operation on the Shelf

Plaintiff identifies five activities that constitute the causes of its alleged injuries: (1) TGP's assignment of its gas-processing contract with Plaintiff to Kinetica; (2) Kinetica's closure of an onshore valve in the Cameron Pipeline System; (3) TGP and Kinetica's failure to provide daily volume and customer reports; (4) Kinetica's misrepresentations of the directional flow of the relevant pipeline; and (5) Targa's demands for deficiency payments. Together, these activities form the basis of Plaintiff's causes of action for breach of contract, tortious interference, and declaratory judgment. None of these activities are operations, or physical acts, conducted on the OCS. With the exception of Kinetica's closure of the onshore valve, none of the alleged activities are physical acts, and thus cannot constitute an operation. Further, the sole physical act, the closure of the valve, occurred onshore and was not conducted on the OCS. All five activities fail to meet the first prong of the Fifth Circuit's test, and therefore this Court lacks jurisdiction over the claim.

### C. The Activities in Question Do Not Involve Development or Production

Further, none of the activities outlined above involve development or production, as those terms are defined by the OCSLA. Defendants argue that Plaintiff's onshore processing plant satisfies the definition of 'development.' Because this term refers to a specific stage in the

8

overall life cycle of mineral extraction, its definition in the OCSLA is instructive. Defendants are correct that this definition expressly includes the operation of onshore support facilities as an example of a development activity. 43 U.S.C. § 1331(l). This inclusion follows a list of other development activities, such as geophysical activity and platform construction, which all closely follow the discovery of minerals in paying quantities. *Id.* These activities all concern the successful removal of discovered minerals. The principle of *ejusdem generis* suggests that any onshore facilities should be understood to share a similar purpose. Plaintiff's onshore facility is unrelated to the removal of minerals; its facility solely is concerned with the processing and fractionation that occurs long after minerals have been discovered and removed.

Defendants' interpretation of the term 'development' also neglects the final clause in the definition which explicitly limits the definition to activities "which are for the purpose of ultimately *producing* the minerals discovered." *Id.* (emphasis added). This clause further limits the type of onshore facility contemplated by the statute. Production, defined in the very next subsection of the statute, is a precise term, referring to those activities "which take place after the successful completion of any means for the removal of minerals." 43 U.S.C. § 1331(m). The definition of 'production' also contains an illustrative list that focuses exclusively on activities associated with safe removal and transport to shore. *Id.* Neither subsection (l) or (m) contemplates downstream processing activities, such as the ones performed by Plaintiff's facility. Additionally, neither subsection contemplates transport through onshore pipelines. Thus, the activities which Plaintiff alleges caused its injuries are beyond the scope of development and production as those terms are defined by the OCSLA. Since none of the activities in question involve those specific stages, claims arising from or in connection to such activities fall outside

the jurisdictional grant of the OCSLA. Accordingly, this Court lacks subject matter jurisdiction over the claims.

Because the activities that caused the injury do not constitute an operation on the OCS that involves development or production, the Court does not need to reach the question of whether the case arises from such an operation. Although the OCSLA's jurisdictional grant is broad, it does not reach claims arising out of contractual disputes concerning Plaintiff's onshore processing plant. The Fifth Circuit has limited federal jurisdiction to activities that constitute an operation conducted on the OCS, and this Court abides by that limitation.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (Doc. No. 19) is **GRANTED**.

**IT IS SO ORDERED**

**SIGNED** at Houston, Texas on this the second day of September, 2014

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE